IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MINNIE P. BRANTLEY, ) | Civil Action No. 3:06-44-HMH-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claims for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In March 2003, Plaintiff applied for SSI and for DIB. Plaintiff's applications were denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held November 9, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated September 15, 2005, denying benefits and finding that Plaintiff was not disabled because she had the residual functional capacity to perform a range of medium work, and could perform her past relevant work as a mental health specialist.

Plaintiff was fifty-five years old at the time of the ALJ's decision. She has a high school education and past relevant work as a mental health specialist. Plaintiff alleges disability since December 10, 2002, due to heart problems, a pulmonary embolism, and back pain.

The ALJ found (Tr. 26):

1. THE CLAIMANT MET THE NON-DISABILITY REQUIREMENTS FOR A PERIOD OF DISABILITY AND DISABILITY INSURANCE BENEFITS SET FORTH IN SECTION 216(I) OF THE SOCIAL SECURITY ACT AND IS INSURED FOR BENEFITS THROUGH THE DATE OF THIS DECISION.

2. THE CLAIMANT HAS NOT ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY SINCE THE ALLEGED ONSET OF DISABILITY.

3. THE CLAIMANT'S HYPERTENSION AND DIABETES MELLITUS ARE CONSIDERED "SEVERE" BASED ON THE REQUIREMENTS IN THE REGULATIONS 20 CFR §§ 404.1520(C) AND 416.920(C).

4. THESE MEDICALLY DETERMINABLE IMPAIRMENTS DO NOT MEET OR MEDICALLY EQUAL ONE OF THE LISTED IMPAIRMENTS IN APPENDIX 1, SUBPART P, OF REGULATION NO. 4.

5. THE CLAIMANT'S ALLEGATIONS REGARDING HER LIMITATIONS ARE NOT TOTALLY CREDIBLE FOR THE REASONS SET FORTH IN THE BODY OF THE DECISION.

6. THE CLAIMANT HAS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM WORK WITH RESTRICTIONS REQUIRING LISTING AND/OR CARRYING 50 POUNDS OCCASIONALLY, 25 POUNDS FREQUENTLY; NO CLIMBING OF LADDERS, ROPES, OR SCAFFOLDS; AND AVOIDANCE OF HAZARDS SUCH AS HEIGHTS AND MOVING MACHINERY DUE TO CHRONIC COUMADIN THERAPY.

7. THE CLAIMANT'S PAST RELEVANT WORK AS MENTAL HEALTH SPECIALIST DID NOT REQUIRE THE PERFORMANCE OF WORK-RELATED ACTIVITIES PRECLUDED BY HER RESIDUAL FUNCTIONAL CAPACITY (20 CFR §§ 404.1565 AND 416.965).

8. THE CLAIMANT'S MEDICALLY DETERMINABLE HYPERTENSION AND INSULIN-DEPENDENT DIABETES MELLITUS DO NOT PREVENT THE CLAIMANT FROM PERFORMING HER PAST RELEVANT WORK.

>   9.   THE CLAIMANT WAS NOT UNDER A "DISABILITY" AS DEFINED IN THE SOCIAL SECURITY ACT, AT ANY TIME THROUGH THE DATE OF THE DECISION (20 CFR §§ 404.1520(F) AND 416.920(F)).

On November 17, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on January 4, 2006.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff has insulin-dependent diabetes mellitus, hypertension, and obesity. See Tr. 144-145, 150, 266. In April 2002, Plaintiff was involved in a motor vehicle accident and initially reported neck, shoulder, and knee pain which improved after a physical therapy session and the use of home exercises. Tr. 186, see Tr. 182-187.

On December 10, 2002, Plaintiff was involved in another motor vehicle accident. Tr. 144, 179. A CT scan showed a hematoma of Plaintiff's front of her head, with no evidence of fracture.

Plaintiff also complained of knee pain. She was treated with anti-inflammatory drugs and muscle relaxants and discharged. Tr. 144. Plaintiff complained the next day to her primary care physician, Dr. Billy J. Lance, of pain in her neck, back, face, chest, and legs. Tr. 179. X-rays showed an enlarged heart and degenerative arthritis of her lumbar spine. Tr. 197. Dr. Lance told Plaintiff to remain off work for three weeks. Tr. 180.

On December 13, 2002, Plaintiff experienced dizziness and severe shortness of breath, and went to the emergency room. Tr. 144. An angiogram showed that Plaintiff had a large pulmonary embolism. An EKG revealed tachycardia. Further testing showed an acute cor pulmonale[1] with right ventricular failure, mild to moderate tricuspid valve insufficiency, normal left ventricular function, and a small pericardial effusion (fluid around her heart). Tr. 143, 145, see also Tr. 224-227, 287-307. Treatment notes also indicated that upon discharge Plaintiff had osteoarthritis in her lower back and possible obstructive sleep apnea. Tr. 145, see also Tr. 141. Plaintiff was hospitalized for ten days and treated with blood thinning medications. Tr. 145. Dr. Solomon Chesoni, a cardiologist, prescribed Coumadin (a blood thinner) and indicated that Plaintiff could engage in activity as tolerated, with the avoidance of strenuous physical activity. Tr. 143.

Dr. Chesoni examined Plaintiff on January 15, 2003. Plaintiff reported shortness of breath with minimal exertion. Dr. Chesoni noted that Plaintiff's hypertension was controlled, stated that she should not return to work until re-evaluated, and gave her a work excuse until February 5, 2003.

---

[1] An acute cor pulmonale is an "acute overload of the right ventricle due to pulmonary hypertension, usually resulting from acute pulmonary embolism." A chronic cor pulmonale is "heart disease characterized by hypertrophy and sometimes dilation of the right ventricle secondary to disease affecting the structure or function of the lungs, but excluding those pulmonary disorders resulting from congenital heart disease or from diseases primarily affecting the left side of the heart." Dorland's Illustrated Medical Dictionary 417 (30th ed. 2003).

Tr. 220.  On February 5, 2003, Dr. Chesoni noted that Plaintiff's hypertension was uncontrolled and he changed her medications.  Tr. 217.   On February 7, 2003, Plaintiff was treated in the emergency room for elevated blood pressure (212/102).  Tr. 158-159.

On February 10, 2003, Dr. Lance noted that Plaintiff's blood pressure was still elevated, but her blood sugar level was good.  He wrote that Plaintiff could still not due regular activities due to her automobile accident.  Tr. 178.  On February 25, 2003, Plaintiff complained of mild exertional shortness of breath and occasional heart palpitations.  Dr. Chesoni noted that Plaintiff's right heart ventricle has "yet to recover systolic performance."  Tr. 216.

On March 21, 2003, Plaintiff was treated in the emergency room for neck spasm.  An electrocardiogram showed that Plaintiff's heart had a normal sinus rate and rhythm, but that she had left atrial enlargement.  Tr. 157.  Plaintiff was diagnosed with neck spasm, hypertension, and diabetes.  Tr. 151-154, 157.   In March and May 2003, Dr. Lance noted that Plaintiff's blood pressure remained too high.  Tr. 175-176.

From April 22 to May 8, 2003, Plaintiff was hospitalized for sepsis from a bacterial infection.  Antibiotic therapy was prescribed.  An echocardiogram on April 26, 2003, showed mild mitral and tricuspid insufficiency, but was considered to otherwise be normal.  Tr. 311.  On May 2, 2003, an echocardiogram revealed normal valves, normal left ventricular performance, normal right ventricle, borderline enlargement of the left ventricle, mild mitral and tricuspid insufficiency, and small-to-moderate sized pericardial effusion.  Tr. 221-222, 309-310.

Plaintiff complained to Dr. Chesoni of weakness in both arms, left arm pain, and stiffness in her neck on May 29, 2003.  Tr. 211.  On June 19, 2003, Plaintiff complained to Dr. Lance of pain in her upper back, shoulders, lower back, and left arm, with stiffness in her hands at times.  Her

5

blood pressure and blood sugar levels were elevated. Dr. Lance ordered further tests. Tr. 174. On June 30, 2003, Dr. Chesoni noted that Plaintiff's May 2003 echocardiogram indicated a return of function to the right ventricle. He assessed hypertension, chronic Coumadin therapy, and hyperlipidemia. Tr. 209-210. Plaintiff was examined by Dr. Mark Lencke, a neurologist, on July 18, 2003. An EMG and nerve conduction studies were unremarkable and showed no evidence of nerve damage. Dr. Lencke noted that Plaintiff's left arm symptoms had resolved. Tr. 170-171.

On August 25, 2003, Plaintiff reported to Dr. Chesoni that she had fatigue and mild shortness of breath on exertion. Dr. Chesoni diagnosed hypertension, chronic Coumadin therapy, history of massive pulmonary embolus with cor pulmonale, return of right ventricular function in May 2003, hyperlipidemia, obesity, and rule out obstructive sleep apnea. Tr. 207. On September 22, 2003, Dr. Chesoni directed Plaintiff to continue her current treatment regime. Tr. 206.

On October 17, 2003, Plaintiff sought care in the emergency room for swelling and pain in her right leg. It was noted that Plaintiff had some edema in both legs, but a vascular scan showed no evidence of thrombosis. Tr. 246, 255.

On February 10, 2004, Plaintiff complained to Dr. Chesoni of back and hip pain. Dr. Chesoni diagnosed Plaintiff with hypertension with hypertensive heart disease, chronic Coumadin therapy, hyperlipidemia, obesity, and diabetes. Persantine and stress myocardial perfusion scan were recommended to evaluate Plaintiff for coronary artery disease due to her multiple risk factors. Plaintiff, however, declined further diagnostic testing. Tr. 266-267. On June 22, 2004, Plaintiff complained to Dr. Chesoni of fatigue, intermittent edema in her legs, and dizziness if she leaned over too far. Dr. Chesoni noted that Plaintiff had a trace of pretibial edema and prominent varicose veins over her lower extremities. Her medications were continued. Tr. 283-284.

At the hearing, Plaintiff testified that she could not do any lifting at all; could not stand, walk, or sit for very long; she had pressure in her chest; and she had pain in her legs and back. Tr. 335-336, 341. Plaintiff stated that in a typical day she would sit around and would lie down and take a nap for a couple of hours. She testified that her family members handled all of the household chores and shopping. Tr. 337-339.     Plaintiff applied for disability benefits from the South Carolina State Retirement System as to her job as a mental health specialist. Although benefits were initially denied in March 2003, they were later awarded to Plaintiff. See Tr. 79-80, 344.

Plaintiff alleges that: (1) the ALJ failed to properly assess the opinion of Plaintiff's treating physician; (2) the ALJ failed to explain his findings regarding Plaintiff's residual functional capacity ("RFC"); (3) the ALJ failed to consider all of Plaintiff's impairments in making his RFC assessment; and (4) the ALJ failed to properly access Plaintiff's credibility. The Commissioner contends that the ALJ's decision is supported by substantial evidence.[2]

A.     Treating Physician

Plaintiff alleges that the ALJ erred in failing to properly consider the opinion of her treating physician, Dr. Billy Lance. The Commissioner contends that the ALJ properly evaluated

---

[2]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

Dr. Lance's opinion and discounted it because it was an opinion reserved for the Commissioner, it was inconsistent with Dr. Lance's own progress notes, and it was inconsistent with Dr. Chesoni's records which showed that Plaintiff's ventricles returned to normal. The Commissioner acknowledges that the ALJ did not specify the weight given to Dr. Lance's opinion, but argues that this deficiency is not grounds for reversal (Defendant's Brief at 14).

On June 19, 2003, Dr. Lance assessed Plaintiff's physical capacity and reported that she could walk, stand, or sit for less than one hour per day. Tr. 166. He further opined that Plaintiff could never lift any amount of weight; she was restricted in climbing and bending; and she required rest periods during the day. Dr. Lance indicated that Plaintiff's medications could cause drowsiness and frequent urination. He concluded that Plaintiff was not capable of performing sedentary work, and she could not work eight hours per day, five days per week, because her heart could not tolerate it. Dr. Lance also noted that Plaintiff's heart impairment was a worsening condition which would not improve. Tr. 166-167.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988), and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986). In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician. See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983). The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of

8

time." An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled. DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1527(d)(2). The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Here, it is unclear what weight the ALJ assigned Dr. Lance's opinion. The ALJ appears to have discounted Dr. Lance's opinion almost solely based on the May 2003 echocardiogram. The ALJ, however, appears to have substituted his own judgment for those of the medical providers in determining that Plaintiff's ventricles had returned to normal such that Plaintiff had the RFC to perform medium work and such that Dr. Lance's opinion should be disregarded. Although Dr. Chesoni noted (on June 30, 2003) that Plaintiff's May 2003 echocardiogram showed a return of function to the right ventricle, the echocardiogram also showed that there was borderline enlargement of Plaintiff's left ventricle; mild mitral and tricuspid insufficiency; and small-to moderate sized pericardial effusion. It is unclear whether this would reduce Plaintiff's ability to perform medium work. Additionally, it is unclear whether Dr. Lance had the May 2003 echocardiogram results at the time he assessed Plaintiff's physical capacity and opined that she could not perform sedentary work. It may be necessary to obtain additional information from Dr. Lance, Dr. Chesoni, and/or another medical source in order to determine the weight to be assigned to Dr. Lance's opinion and to determine Plaintiff's RFC. Although the ALJ indicated that Dr.

9

Lance's records did not support Dr. Lance's opinion of disability, the ALJ has cited no specific records to support this determination.

B.    Credibility

Plaintiff alleges that the ALJ erred in evaluating her credibility. Specifically, she claims that the ALJ failed to consider anything other than the medical evidence, failed to make any specific findings, and failed to consider her more than thirty year work history. The Commissioner contends that the ALJ properly evaluated all of the evidence in making his credibility determination.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

Here, the ALJ does not appear to have considered all of the evidence in making his credibility determination. The ALJ wrote:

> I DO NOT FIND CURRENT OBJECTIVE MEDICAL EVIDENCE, WHICH SUBSTANTIATES THE ALLEGATIONS OF SEVERE

> RESIDUALS OF WEAKNESS, NUMBNESS, CHEST PRESSURE, OR BACK PROBLEMS, SECONDARY TO AN AUTOMOBILE ACCIDENT. AS PREVIOUSLY NOTED, THE CLAIMANT'S VENTRICLES RETURNED TO NORMAL BY ECHOCARDIOGRAM IN MAY 2003. ACCORDINGLY, I FIND THE CLAIMANT'S DESCRIPTION OF HER LIMITATIONS EXCEEDS MEDICAL SUBSTANTIATION AND IS NOT CONSISTENT WITH OTHER EVIDENCE AND THEREFORE, IS NOT FULLY CREDIBLE.
>
> THERE HAVE BEEN NO FREQUENT EMERGENCY ROOM, INTENSIVE INPATIENT OR OUTPATIENT HOSPITAL VISITS, NO SURGICAL INTERVENTION, AND NO REPORTED ATROPHY OR CHANGES IN WEIGHT, WHICH ARE RELIABLE INDICATORS OF LONGSTANDING, SEVERE, OR INTENSE PAIN, AND THE RECORDS DO NOT INDICATE THAT THE CLAIMANT SUFFERS FROM ANY COMPLICATIONS RELATED TO HER HYPERTENSION OR DIABETES.

Tr. 24.

Contrary to the ALJ's determination, x-ray evidence indicated that Plaintiff had degenerative arthritis of her lumbar spine. She went to the emergency room for neck spasms in March 2003, and was treated in the emergency room for swelling and pain in her leg in October 2003. Plaintiff also complained to Dr. Chesoni and Dr. Lance of back pain. In his June 19, 2003 assessment, Dr. Lance noted that Plaintiff required rest periods during the day. Although the ALJ writes that the record indicated that Plaintiff did not suffer from any complications related to her hypertension or diabetes, the medical record references fatigue, edema in Plaintiff's legs, and dizziness. The ALJ also does not appear to have considered the side effects of Plaintiff's medications. Further, Plaintiff has a long work history. Where a claimant has worked steadily for a number of years and where "[t]here is no evidence of malingering..." his credibility is enhanced. Lanning v. Heckler, 777 F.2d 1316 (8th Cir. 1985)(dictum); see also Vitek v. Finch, 438 F.2d 1157, 1159 (4th Cir. 1971); Nanny v. Mathews, 423 F. Supp. 548, 551 (E.D.Va. 1976).

11

## CONCLUSION

The Commissioner's decision is not supported by substantial evidence. This action should be remanded to the Commissioner to properly consider the opinion of Plaintiff's treating physician (Dr. Lance), evaluate Plaintiff's credibility, and determine Plaintiff's RFC. In doing so, the ALJ should consider all of Plaintiff's impairments.

RECOMMENDED that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. §§ 405(g) and 1383(c)(3) and that the case be remanded to the Commissioner for further administrative action as set out above.

    Respectfully submitted,

    s/Joseph R. McCrorey
    United States Magistrate Judge

October 27, 2006
Columbia, South Carolina